Matthew C. Bate (*PHV application pending*)
mcbate@winston.com
WINSTON & STRAWN LLP
1 Ropemaker Street
London EC2Y 9AW
United Kingdom
Telephone: +44 20 7011 8797

Ryan D. Evans (SBN: 295600)
revans@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

Attorneys for Petitioner
SKAZZI3 CAPITAL LIMITED

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKAZZI3 CAPITAL LIMITED,<br><br>Petitioner,<br><br>v.<br><br>PATHWAY GENOMICS CORPORATION,<br><br>Respondent. | Case No. __'18 CV 0317 BEN KSC__<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD; EX PARTE APPLICATION FOR WRIT OF ATTACHMENT; APPLICATION FOR TEMPORARY PROTECTIVE ORDER** |

PETITION TO ENFORCE ARBITRATION AWARD

AmericasActive:11694259.6

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.  INTRODUCTION .................................................................................................. 1

II.  FACTS ................................................................................................................... 2

III.  JURISDICTION AND VENUE ............................................................................ 8

IV.  LEGAL ARGUMENT .......................................................................................... 8

    A.  The Court Should Confirm The Award Under the New York Convention .................................................................................. 9

    B.  The Court Should Issue an Ex Parte Right to Attach Order and Writ of Attachment ..................................................................... 11

        1.  Petitioner Has Met the Requirements for Ex Parte Relief under CCP Section 485.010 ............................................ 12

        2.  Petitioner's Application is Fully Supported by Affidavit .................................................................................... 14

        3.  Petitioner Has Met the Requirements for a Right to Attach Order and Writ of Attachment under CCP Section 484.020 ........................................................................... 15

    C.  Alternatively, the Court Should Issue a Temporary Protective Order Enjoining Pathway from Transferring its Property ............................................................................................. 18

V.  CONCLUSION ................................................................................................... 19

---

i

AmericasActive:11694259.6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Empresa Constructora Contex Limitada v. Iseki, Inc.*,
106 F. Supp. 2d 1020 (S.D. Cal. 2000) ....................................................................9

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002) ............................................................................9, 12

*Ministry of Def. & Support of the Armed Forces of the Islamic Republic
of Iran v. Cubic Def. Sys., Inc.*,
665 F.3d 1091 (9th Cir. 2011) ...............................................................................10

*Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie
du Papier (RAKTA)*,
508 F.2d 969 (2d Cir. 1974) ...................................................................................11

*Rose v. Abraham*,
2008 WL 2275573 (E.D. Cal. May 21, 2008) ........................................................19

*Thunderbird Resorts Inc. v. Zimmer*,
2015 WL 4617431 (S.D. Cal. July 30, 2015)....................................................18, 19

*W. Steel & Ship Repair, Inc. v. RMI, Inc.*,
176 Cal. App. 3d 1108 (1986) ................................................................................13

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,
126 F.3d 15 (2d Cir. 1997) ...............................................................................10, 11

**Statutes**

9 U.S.C. § 201...........................................................................................................9

9 U.S.C. § 201 *et seq.* ..........................................................................................1, 8

9 U.S.C. § 202...........................................................................................................9

9 U.S.C. § 203...........................................................................................................8

9 U.S.C. § 204...........................................................................................................8

MEMORANDUM OF POINTS AND AUTHORITIES ISO PETITION TO ENFORCE ARBITRATION AWARD

AmericasActive:11694259.6

9 U.S.C. § 207 .................................................................................................. 9, 11, 19

28 U.S.C. § 1331 ....................................................................................................... 8

28 U.S.C. § 1391(a) .................................................................................................. 8

Cal. Civ. Proc. Code § 484.020 ........................................................................ 15, 16

Cal. Civ. Proc. Code § 484.020(e) ......................................................................... 17

Cal. Civ. Proc. Code § 485.010 ............................................................................. 18

Cal. Civ. Proc. Code § 485.010(a) .................................................................... 12, 13

Cal. Civ. Proc. Code § 485.010(b) ......................................................................... 13

Cal. Civ. Proc. Code § 485.010 *et seq.* ............................................................ 12, 18

Cal. Civ. Proc. Code § 485.210 ............................................................................. 12

Cal. Civ. Proc. Code § 486.010(a) ......................................................................... 18

Cal. Civ. Proc. Code § 486.010(b) ......................................................................... 18

Cal. Civ. Proc. Code § 486.020 ............................................................................. 18

Cal. Civ. Proc. Code § 487.010 ............................................................................. 17

**Other Authorities**

21 U.S.T. 2517, 330 U.N.T.S. 3 ...................................................................... 8, 10, 11

Fed. R. Civ. P. 64 .................................................................................................. 11

Federal Tribunal State of June 17, 2005, art. 100 ................................................... 7

LCIA R. 28 (4) .......................................................................................................... 5

AmericasActive:11694259.6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is an action to enforce a final international arbitral award under 9 U.S.C. § 201 *et seq*. and to obtain a writ of attachment over the award-debtor's funds, or alternatively, a temporary protective order, in order to secure the award debt. Petitioner, SKAZZI3 Capital Limited ("SK3"), is a Hong Kong corporation that commenced an arbitration  (the "Arbitration") against Respondent, a San Diego-headquartered company named Pathway Genomics Corporation ("Pathway"), to resolve a dispute over commissions contractually owed to SK3 under the parties' agreements.

After over a year of proceedings in which Pathway fully participated, in November 2016, the arbitrator issued an award in favor of SK3 (the "Award").  The Award held that Pathway breached its agreements with SK3 by knowingly concealing its receipt of investment that would have entitled SK3 to commissions, and that Pathway's concealment of this investment continued during the Arbitration itself.  Based on these and other findings, the Award ordered Pathway to pay SK3 damages in the amount of $41,000.37 plus interest at a daily rate of $5.62 per day from November 16, 2017.  The Award also ordered Pathway to pay SK3's costs of the arbitration in the amount of GBP 45,072.40.

Further, the Award ordered Pathway to bear all of SK3's reasonable legal costs and expenses that it incurred in pursuing its dispute with Pathway, and further ordered that, in the absence of an agreement between the parties as to the amount of SK3's reasonable legal costs and expenses, the Tribunal reserved jurisdiction to determine the amount in a separate award.  As detailed below, SK3's legal costs and expenses prior to issuance of the Award amount to $299,803.54, plus GBP 14,610.00.  Further, SK3 has incurred legal costs and expenses in seeking to enforce this Award in the amount of $59,281.00.  Pathway has not disputed these amounts nor

MEMORANDUM OF POINTS AND AUTHORITIES ISO PETITION TO ENFORCE ARBITRATION AWARD

could it, as all of these amounts were reasonably incurred by SK3 in the pursuit of its claims against Pathway. SK3 is therefore confident that it will be able to recover these amounts by way of a further award of costs from the Tribunal, and will petition the Court for confirmation of that award as and when it is issued.

Pathway has not challenged any part of the Award, and the time period for challenging it at the seat of arbitration in Switzerland expired on December 4, 2017. Yet Pathway has refused to pay any portion of the Award debt despite repeated requests by SK3 to do so. Given Pathway's prior attempts to conceal investment in an effort to evade its liability to SK3, there is every reason to believe that Pathway will now seek to avoid the Award debt by secretly transferring its assets beyond SK3's reach during the enforcement stage. SK3 accordingly brings this action to enforce the Award and to obtain a pre-judgment attachment of Pathway's corporate property, or alternatively, a temporary protective order enjoining any transfer of that property, so as to prevent the serious and irreparable harm to SK3 that would result if SK3 is unable to levy on the amounts to which it is indisputably entitled.

## II.   FACTS

SK3 is a Hong Kong corporation. Declaration of Matthew C. Bate, dated February 8, 2018 ("Bate Decl.") at ¶ 2. Pathway is a California corporation headquartered in San Diego, California. Bate Decl. ¶ 2.

SK3 and Pathway entered into an agreement dated July 10, 2014, by which Pathway engaged SK3 to act as Pathway's business development consultant within the European Union, the Gulf Cooperation Council, and China (the "Consultancy Agreement"). Among other things, the Consultancy Agreement provided for SK3 to introduce investors to Pathway in exchange for commissions on any investment raised pursuant to such introductions. Bate Decl. ¶ 3.

Subsequent to concluding the Consultancy Agreement, the Parties entered into a Side Letter to the Agreement dated April 20, 2015, that varied the commissions due on certain investments that SK3 introduced to Pathway through

various intermediaries (the "Side Letter").    Thereafter, a dispute arose over commissions due to SK3 under the Consultancy Agreement and the Side Letter in respect of investment that Pathway was raising through SK3's intermediary named Abdul Rahman Al Jasmi (himself an investor in Pathway) and others associated with him (the "Al Jasmi Investors").  Bate Decl. ¶ 4.

The parties agreed to settle this dispute pursuant to the terms of a Confidential Settlement Deed dated September 22, 2015 (the "Settlement Deed" or "Deed"). The Consultancy Agreement, the Side Letter, and the Settlement Deed provided for all disputes between the parties to be settled by arbitration under the rules of the London Court of International Arbitration ("LCIA") before a sole arbitrator in Geneva, Switzerland.  Bate Decl. ¶ 5.

Following the conclusion of the Settlement Deed, a further dispute arose over Pathway's performance of its obligations under the Deed.   These obligations included, among others, both an obligation for Pathway to provide SK3 with an accounting of the investment that it raised from any of the Al Jasmi Investors as well as an obligation to pay SK3 commissions on such investment.  Bate Decl. ¶ 6.

On July 25, 2016, SK3 filed a Request for Arbitration with the LCIA and brought claims against Pathway under the Settlement Deed, the Consultancy Agreement and the Side Letter.  Pathway filed its Response to the Request for Arbitration on August 21, 2016.  Bate Decl. ¶¶ 7, 9, Exs. A & B.

Following the parties' filing of their initial pleadings in the Arbitration, on September 21, 2016, the LCIA appointed a sole arbitrator, Mr. Andrew Moran QC (the "Arbitrator"), in accordance with the arbitration agreements contained in the Consultancy Agreement, the Side Letter and the Deed.  Bate Decl. ¶ 11, Ex. C.

On February 22, 2017, the parties notified the Arbitrator of their agreement to have SK3's claims heard on a "documents-only" basis, with agreement of the

parties documented by the Tribunal in a Procedural Order dated March 3, 2017. Bate Decl. ¶ 13, Ex. D.

The parties then proceeded to file detailed written evidentiary submissions in support of their claims and defenses.  These included:  (i) SK3's Statement of Case filed on March 10, 2017; (ii) Pathway's Statement of Defense filed on April 28, 2017; and (iii) SK3's Statement of Reply filed on May 19, 2017.  Bate Decl. ¶ 15, Exs. E, F, & G.  On June 12, 2017, the parties submitted an agreed-upon list of issues to the sole arbitrator for decision by the Arbitrator in his Award.  Bate Decl. ¶ 17, Ex. H.

The Arbitrator rendered the Award on July 18, 2017.  Bate Decl. ¶ 19, Ex. I. The Award found Pathway in breach of its obligations to SK3 under the parties' agreements.  In addition, the Award specifically found that Pathway knowingly concealed its receipt of investment from Al Jasmi Investors in an attempt to escape its contractual liability to SK3 for the commissions due on such investment, and that this concealment continued during the Arbitration.  The Award further held that Pathway's dishonest conduct during the Arbitration justified an order against Pathway directing it to pay all of SK3's arbitration costs as well as its reasonable legal costs and expenses.  The relevant sections of the Award state as follows:

> Before proceeding further, the Tribunal should therefore make particular note of its finding (for it will be relevant on issues of costs) that on the basis of the evidence and submissions advanced before it, ***the Respondent's statement just referred to in its Response to the [Request for Arbitration] that***:
>
> > ***"there have been no further payments to/investments in Pathway which constitute Al-Jasmi Consideration for the purposes of the Deed." [CD/34/2/para (iii) (b)]***;
>
> ***was false and untrue as the Respondent must have known*** - on any ordinary understanding of the words used.  If the

expiry argument had been the Respondent's case and justification for this statement before that argument was articulated by the Respondent's replacement Counsel on 6 December 2016, then the frank and honest answer to the allegation would have made clear that Al-Jasmi Consideration had been received; but was not subject to the reporting, accounting or payment of commission obligations, because they had expired. This is conduct which the Tribunal ought properly to take into account in its decision on costs under Article 28.4 of the LCIA Rules; subject of course to anything contained in the parties' submissions on costs and without prejudice correspondence relating thereto, which have been submitted to the Tribunal but not yet opened, as this part of the Award is being prepared. ***The disingenuous presentation by the Respondent of a legal argument found by the Tribunal to be entirely lacking in merit in terms that "We do not expect this to be a source of controversy given the clear contractual language in this regard" at the time of confessing receipt of this investment, serves only to aggravate the Respondent's conduct.***

…

There is another reason, in addition to its prime task of determining the substantive issues in the reference, why the Tribunal has been obliged to trace in this Award, the whole course of the Respondent's conduct in relation to it.  That is because pursuant to LCIA Rule 28 (4), the Tribunal is expressly empowered to take account of the Respondent's conduct in the arbitration in making its decisions on costs and the Claimant invites it to do so. Thus against the background of the Respondent (i) inducing the Claimant to believe it would circumvent it and disregard its rights; (ii) breaching its contracts with the Claimant as the Tribunal has now found; ***the Tribunal finds that in this arbitration the Respondent has misconducted itself by (i) deliberately concealing and then falsely denying the fact of receipt of Al-Jasmi Consideration - an egregious breach of contract (which is not to be measured by its quantum but by its***

*character); then (ii) continuing in its refusal to perform the vital accounting aspect of the contract, until it knew it would be forced to perform, and did so belatedly only by 4 January 2017*; (iii) when the Claimant was doubtfully satisfied by the complete Accounting lately provided, and it withdrew its financial claims beyond what it has now secured, instead of admitting its breaches as such, offering to pay the very modest amount of commission due and costs thus far in the reference, it pursued an ill-judged course of erecting defences devoid of legal merit and scorned the Claimant's pursuit of its rights. ***This is conduct by the Respondent, which the Tribunal should and does weigh against it in its decisions on costs. It has misled the Claimant and the Tribunal, it was non-co-operation of a serious order and type, which has resulted in unnecessary delay and expense both in the costs expended by the Claimant and incurred by the Tribunal.***

Bate Decl. ¶ 23, Ex. I at 91, 104–105 (emphasis added).

Based upon these and other findings, the final section of the Award declared Pathway in breach of its obligations under the Deed, the Consultancy Agreement, and the Side Letter, and further ordered the following relief:  (i) damages to SK3 in a total amount of $41,000.37 within 14 days, i.e., no later than November 16, 2017, (ii) post-award interest on any outstanding amounts which remained unpaid after November 16, 2017, at a rate of $5.62 per day; (iii) an order for Pathway to bear all of the costs of the Arbitration as determined by the LCIA Court in a total amount of GBP 88,399.91, of which GBP 45,072.40 was advanced by SK3 and thus falls to be recovered from Pathway pursuant to the Award; and (iv) an order directing Pathway to pay all of SK3's reasonable legal costs and expenses incurred in pursuit of its claims in the Arbitration, whereby the Tribunal reserved its jurisdiction to determine the amount of these costs in the event the parties are unable to agree on the amount themselves.  Bate Decl. ¶ 24, Ex. I at 110–11.

The Award was issued in Geneva, Switzerland and was notified to the parties on November 2, 2017.  Bate Decl. ¶¶ 21, 25, Ex. J.  Under Article 100 of the Federal Tribunal State of June 17, 2005 governing arbitral awards issued in Switzerland, a party has 30 days from the date of notification of the award in which to bring an action to set aside the award before the Swiss Federal Tribunal.  Yet Pathway never took any steps to set aside, suspend, modify, or otherwise appeal the Award within the 30-day time period.  Bate Decl. ¶ 25.  Accordingly, the time for Pathway to challenge the Award expired on December 4, 2017.  Bate Decl. ¶ 25.

Following the transmission of the Award to the parties, SK3 wrote to Pathway through its counsel on November 9th 2017 and invited Pathway to voluntarily comply with the Award.  Bate Decl. ¶ 26, Ex. L.  This included the payment of: (i) $41,000.37 in damages plus interest thereafter at a rate of $5.62 per day from November 16, 2017; plus (ii) GBP 45,072.40 in arbitration costs which had been advanced by SK3 and which the Award ordered Pathway to bear.  SK3 also submitted a detailed summary of its reasonable legal fees and expenses incurred in pursuing its claims against Pathway in a total amount of $299,803.54 plus GBP 14,610.00.  *Id.*  These amounts are fully evidenced by various invoices issued to SK3 and were all reasonably incurred by SK3 in pursuit of its claims in the Arbitration.  Bate Decl. ¶ 26 , Ex. K.

When Pathway did not respond to this initial request to voluntarily comply with the Award, SK3 addressed a second request through its counsel on December 1st 2017.  Bate Decl. ¶ 27, Ex. M.  Later in the day on December 1st, 2017, Pathway's counsel confirmed receipt of SK3's requests and further confirmed that they had been transmitted to Pathway.  Bate Decl. ¶ 29, Ex. N.

Pathway has never disputed the Award nor has it disputed any of the legal fees and expenses which SK3 reasonably incurred in the pursuit of its claims.  However, to date, Pathway has not complied with the Award nor has it given any undertaking to do so.  Bate Decl. ¶ 30.

1  In addition to the above amounts, SK3 has incurred a further $59,002.00 in
2  legal fees and $279.00 in expenses in attempting to secure Pathway's compliance with
3  the Award since its issuance, including but not limited to legal fees and expenses
4  incurred in the preparation of this action.  Bate Decl. ¶ 31, Ex. O.

5  Both the United States (the place of this action for recognition and
6  enforcement of the Award) and Switzerland (the place where the Award was
7  rendered) are signatories to the Convention on the Recognition and Enforcement of
8  Foreign Arbitral Awards, entered into force with respect to the United States on
9  December 29, 1970 (the "New York Convention" or "Convention").  June 10, 1958,
10  21 U.S.T. 2517, 330 U.N.T.S. 3 (implementing legislation codified at 9 U.S.C.§§
11  201–208).

12  **III.  JURISDICTION AND VENUE**

13  This Court has subject matter jurisdiction over this action under the Federal
14  Arbitration Act, 9 U.S.C. § 201 *et seq*., as this action is for recognition and recognition
15  and enforcement of an arbitration award falling under the New Year Convention.

16  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
17  § 1331 and 9 U.S.C. § 203.

18  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and 9 U.S.C. §
19  204, as Pathway is a resident of this district and, upon information and belief, its
20  property or assets are within this district.

21  **IV.  LEGAL ARGUMENT**

22  Under the New York Convention, District Courts are given the power to
23  confirm and enforce foreign arbitral awards.  Here, SK3 obtained an Award under
24  the auspices of the London Court of International Arbitration which is fully
25  enforceable against Pathway under the New York Convention, and which should
26  be confirmed in a judgment of this Court for the reasons stated below.  Further, SK3
27  seeks the issuance of an *ex parte* right to attach order and writ of attachment, or,
28  alternatively, a temporary protective order enjoining Pathway from transferring its

assets pending the outcome of SK3's efforts to fully recover the amounts due to it pursuant to the express terms of the Award. As detailed below, this relief is urgently needed to avoid irreparable harm to SK3, as without it, there is a serious risk that Pathway will seek to avoid collection of the amounts to which it is entitled, either by concealing its assets or by secreting them beyond SK3's reach. This risk of irreparable harm is clearly demonstrated by Pathway's own deceitful conduct which gave rise to the parties' dispute – deceitful conduct which even continued during the course of the Arbitration itself.

### A.   The Court Should Confirm The Award Under the New York Convention

The New York Convention governs the enforcement and confirmation in the United States of foreign arbitral awards rendered in Switzerland, including the Award at issue in this case. 9 U.S.C. §§ 201–202; *see Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1120–21 (9th Cir. 2002) (Convention governs if State where award was rendered is a party to the Convention). The role of a District Court in reviewing a foreign arbitral award is strictly limited: "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207; *accord Empresa Constructora Contex Limitada v. Iseki, Inc.*, 106 F. Supp. 2d 1020, 1024 (S.D. Cal. 2000). The New York Convention provides extremely limited grounds on which enforcement of a foreign arbitral award may be refused, and even then only in cases where the party against whom enforcement is sought invokes the grounds and provides proof thereof. These limited grounds are defined in the Convention as follows:

> 1.    a party to the arbitration agreement lacked capacity or the agreement to arbitrate or is otherwise invalid under the applicable law;
>
> 2.    "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of

9

the arbitration proceedings or was otherwise unable to present his case;"

3.     the award deals with matters outside the scope of the agreement to arbitrate, provided that any parts of the award falling within the scope of the agreement to arbitration may be recognized and enforced;

4.     "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place;"

5.     the award is not yet final or "binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, the award was made;"

6.     the subject matter of the parties' dispute is "not capable of settlement by arbitration under the law" of the country where confirmation of the award is sought (in this case, the United States); and

7.     "[r]ecognition or enforcement of the award would be contrary to the public policy" of the country where recognition or enforcement is sought (in this case, the United States).

New York Convention, art. V, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3.

These are the only grounds available for refusing to confirm an arbitral award under the New York Convention. *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 20 (2d Cir. 1997) (collecting cases); *see Ministry of Def. & Support of the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1096 (9th Cir. 2011) ("The seven grounds for refusing to confirm an award are set out in Article V of the Convention. These defenses are

AmericasActive:11694259.6

1  construed narrowly ….").  Moreover, the Convention clearly manifests a "general

2  pro-enforcement bias." *Parsons & Whittemore Overseas Co. v. Societe Generale*

3  *de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973 (2d Cir. 1974); *see Yusuf*

4  *Ahmed Alghanim & Sons*, 126 F.3d at 22 (noting that "the Convention intentionally

5  'liberalized procedures for enforcing foreign arbitration awards.'" (citation

6  omitted)).

7  　　　　Pathway cannot establish any of the narrowly defined grounds for this Court

8  to refuse confirmation of the Award under the New York Convention.  The parties'

9  agreement to arbitrate is fully enforceable under the applicable Swiss law; Pathway

10  was given full notice and an opportunity to be heard in the Arbitration; the Award

11  dealt with matters entirely within the scope of the parties' agreement to arbitrate;

12  the arbitral procedure was conducted in full accordance with the governing Swiss

13  law at the seat of arbitration; the award is final and binding on the parties, and has

14  not been set aside or suspended by the competent Swiss courts; the subject matter

15  of the dispute was clearly arbitrable under U.S. law; and there is no conceivable

16  U.S. public policy concern with enforcing the Award against Pathway.  *See* 9

17  U.S.C. § 207; New York Convention, art. V, June 10, 1958, 21 U.S.T. 2517, 330

18  U.N.T.S. 3; *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 19.    Accordingly, the

19  Court should grant SK3's Petition and confirm the Award.

　　　　**B.    The Court Should Issue an *Ex Parte* Right to Attach Order and Writ
　　　　　　　of Attachment**

20

21

22  　　　　Under Rule 64 of the Federal Rules of Civil Procedure, this Court may use

the state attachment procedures available under California law.  *See* Fed. R. Civ. P.

23
64 ("At the commencement of and throughout an action, every remedy is available

24
that, under the law of the state where the court is located, provides for seizing a

25
person or property to secure satisfaction of the potential judgment.").  The fact that

26
the instant case involves an arbitral award does not affect SK3's right to an

27

28  attachment.  "[A]ttachment and comparable provisional remedies for enforcement

MEMORANDUM OF POINTS AND AUTHORITIES ISO PETITION TO ENFORCE ARBITRATION AWARD

of a foreign arbitral award, if available in the enforcing state, are compatible with the [New York] Convention." *Glencore*, 284 F.3d at 1127 (citation omitted).

The procedures and grounds for obtaining a pre-judgment right to attach order and writ of attachment on an *ex parte* basis are governed by the provisions of sections 485.010 *et seq.* of the California Code of Civil Procedure (the "CCP"). CCP section 485.210 provides as follows:

> (a)  Upon the filing of the complaint or at any time thereafter, the plaintiff may apply pursuant to this article for a right to attach order and a writ of attachment by filing an application for the order and writ with the court in which the action is brought.
>
> (b)  The application shall satisfy the requirements of Section 484.020 and, in addition, shall include a statement showing that the requirement of Section 485.010 is satisfied.
>
> (c)  The application shall be supported by an affidavit showing all of the following:
>
> > (1)  The plaintiff on the facts presented would be entitled to a judgment on the claim upon which the attachment is based.
> >
> > (2)  The plaintiff would suffer great or irreparable injury (within the meaning of Section 485.010) if issuance of the order were delayed until the matter could be heard on notice.
> >
> > (3)  The property sought to be attached is not exempt from attachment.
>
> (d)  An affidavit in support of the showing required by paragraph (3) of subdivision (c) may be based on the affiant's information and belief.

Cal. Civ. Proc. Code § 485.210.

### 1.   Petitioner Has Met the Requirements for *Ex Parte* Relief under CCP Section 485.010

CCP Section 485.010(a) requires that, where a plaintiff seeks to obtain a right to attach order and writ of attachment on an *ex parte* basis, the plaintiff must make

a showing that "great or irreparable injury would result to the plaintiff if issuance of the order were delayed until the matter could be heard on notice." Cal. Civ. Proc. Code. § 485.010(a).

CCP Section 485.010(b) further provides that this showing can be met by establishing the presence of a risk that the property sought to be attached would be "concealed, substantially impaired in value, or otherwise made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice." Cal. Civ. Proc. Code § 485.010(b).

California courts have held that evidence of a defendant's "past dishonesty, failure to meet obligations, or concealment of assets" is sufficient to meet this test. *See W. Steel & Ship Repair, Inc. v. RMI, Inc.*, 176 Cal. App. 3d 1108, 1114 (1986).

Here, the facts of the parties' dispute and the Arbitration show a clear and present danger that Pathway will take steps to conceal its property or otherwise make its property unavailable to levy if issuance of the order were delayed until the matter could be heard on notice. Specifically, Pathway has a pattern and practice of knowingly concealing its assets and affirmatively misrepresenting possession of funds in order to avoid paying its debts. Bate Decl. ¶ 23, Ex. I at 91, 104–105. For example, Pathway concealed the fact that it received investment from Al Jasmi Investors in an effort to avoid paying the commissions which Pathway was contractually obligated to pay SK3 under the parties' agreements, and continued to conceal that fact during the Arbitration itself. *Id.* Indeed, Pathway's prior dishonest conduct rose to such an egregious level that the Arbitrator ordered Pathway to bear all of the arbitration costs and all of SK3's reasonable legal costs and expenses. *Id.* at 104–105. Pathway's past dishonesty and current refusal to comply with the Award is forcing SK3 to expend substantial resources to recover what it is owed. Nothing in Pathway's conduct in this dispute indicates that it will pay the amounts owed to SK3 pursuant to the express terms of the Award. To the contrary, all of the evidence suggests that Pathway will attempt to evade making

MEMORANDUM OF POINTS AND AUTHORITIES ISO PETITION TO ENFORCE ARBITRATION AWARD

AmericasActive:11694259.6

any payment.  Therefore, SK3 requests that the Court grant its *ex parte* request to attach order and for a writ of attachment.

### 2.    Petitioner's Application is Fully Supported by Affidavit

SK3's Application is supported by the concurrently filed Bate Declaration, which establishes all of the elements required under CCP Sections 485.210(c) and (d).

First, the facts presented clearly demonstrate that SK3 is entitled to judgment on the claims upon which the attachment is based.  The Award is final and binding on Pathway, Pathway has never sought to challenge it, and there are no conceivable grounds on which it could do so.  Bate Decl. ¶¶ 25, 30.  As for the amounts which SK3 seeks to secure by way of attachment, these too are fully supported by the facts and the evidence.    The   Award   quantified   SK3's   damages   (in   the   amount   of $41,000.37), post-Award interest thereon (in the amount of $466.46) and SK3's arbitration costs (in the amount of GBP 45,072.40) as debts which are due and owing immediately.  As for SK3's reasonable legal costs and expenses in pursuit of its claims in the Arbitration (in a total amount of $299,803.54 plus GBP 14,610.00), the Tribunal ordered Pathway to bear these costs and reserved its jurisdiction to determine them in a separate award of costs if the parties were unable to agree on the amount themselves. When SK3 received the Award, it promptly quantified these costs in a communication to Pathway on November 9th 2017 and Pathway did not dispute them.  As such, SK3 has no basis to consider its legal costs and expenses to be anything but agreed.  Yet even if these amounts were not agreed, SK3 has every right to claim them in a separate award from the Tribunal which it could then enforce in this Court.  Accordingly, the Award provides SK3 a clear route to obtaining a judgment for all of the amounts which it now seeks to secure by way of an attachment over Pathway's assets.

Second, SK3 would suffer great or irreparable injury if issuance of the order of attachment were delayed until the matter could be heard on notice.  In particular, if the order is not granted *ex parte*, there is a likely and substantial danger that, given Pathway's past conduct, Pathway will move its funds and assets in a manner that will

leave SK3 unable to collect the amounts it is owed.  Bate Decl. ¶ 32.  Moreover, while the damages portion of the Award carries interest, the portions of the Award ordering Pathway to pay SK3's costs – and which account for most of the value of the Award debt – do not carry interest.  Thus, every day that Pathway evades its legal obligations to pay SK3, SK3 is irreparably harmed by the time value of money.  Thus SK3 has already suffered a loss and will continue to suffer further losses with each passing day until SK3 recovers the amounts to which it is clearly entitled pursuant to the Award.

Third, the declaration states on information and belief that the property which SK3 seeks to attach is not exempt from attachment.  Bate Decl. ¶ 33.  Accordingly, SK3's Application is fully supported by affidavit within the meaning of CCP 485.210(c).

### 3.   Petitioner Has Met the Requirements for a Right to Attach Order and Writ of Attachment under CCP Section 484.020

CCP Section 484.020 states in relevant part as follows:

> The application [for a right to attach order and a writ of attachment] shall be executed under oath and shall include all of the following:
>
> (a)  A statement showing that the attachment is sought to secure the recovery on a claim upon which an attachment may be issued.
>
> (b)  A statement of the amount to be secured by the attachment.
>
> (c)  A statement that the attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
>
> (d)  A statement that the applicant has no information or belief that the claim is discharged in a proceeding under Title 11 of the United States Code (Bankruptcy) or that the prosecution of the action is stayed in a proceeding under Title 11 of the United States Code (Bankruptcy).

> (e) A description of the property to be attached under the writ of attachment and a statement that the plaintiff is informed and believes that such property is subject to attachment. Where the defendant is a corporation, a reference to "all corporate property which is subject to attachment pursuant to subdivision (a) of Code of Civil Procedure Section 487.010" satisfies the requirements of this subdivision.

Cal. Civ. Proc. Code § 484.020.

Accompanying this Memorandum is an Application for Right to Attach Order and Order for Issuance of Writ of Attachment (the "Application") that has been executed under oath and meets all of the above requirements under CCP Section 484.020. In filing this Application, SK3 wishes to note the following.

Firstly, although the application specifies the amount to be secured by the attachment as $482,913.08 (consisting of $400,551.37, plus GBP 59,682.40 converted to dollars, as detailed below), SK3 notes that this amount is based upon an award denominated in two different currencies. Set out below, by reference to the specific paragraphs of the Award, is a summary of the amounts which SK3 expects to recover, expressed in their original currencies, and with the amount in British Pounds converted into U.S. dollars for purposes of determining the amount to be attached. SK3 reserves the right to request judgment in the amounts expressed in their original currencies.

| Amount to Be Attached | US$ Amount | GBP Amount |
|---|---|---|
| Damages (Award para. 227/4) | $41,000.37 | |
| Interest[1] | $466.46 | |

---

[1] $466.84 represents interest owed between November 16, 2017 and February 8, 2018 at a per diem rate of $5.62.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PETITION TO ENFORCE ARBITRATION AWARD

AmericasActive:11694259.6

| | | |
|---|---|---|
| Arbitration Costs (Award at para. 227/8) | | GBP 45,072.40 |
| Legal Costs and Expenses (Award at para. 227/9) | $299,803.54 | GBP 14,610.00 |
| Legal Costs to Enforce the Award (Award at para. 227/9) | $59,281.00 | |
| **TOTAL** | **$400,551.37** | **GBP 59,682.40 <=> US$ 82,361.71[2]** |

Secondly, SK3 notes that, in relation to CCP Section 484.020(e), SK3 seeks a right to attach order and a writ of attachment over all corporate property which is subject to attachment pursuant to subdivision (a) of CCP Section 487.010, and states that it is informed and believes that the property sought to be attached is not exempt from attachment.  In support of this request, SK3 also submits, as Schedule A to its Application, a non-exhaustive list of the movable property (including both monies in bank accounts and accounts receivables owed by various insurance companies who are listed on Pathway's corporate website as doing business with Pathway) that SK3 has identified in its investigation into Pathway's assets.  SK3 files this Schedule A solely for the purpose of ensuring that any writ of attachment that the Court may order expressly identifies the specific items of property listed in Schedule A without limitation.  Thus, in filing Schedule A, SK3 does not seek thereby to limit the scope of such writ, which should cover all corporate property of Pathway subject to attachment under subdivision (a) of CCP Section 487.010, including but not limited to the specific items of corporate property listed in Schedule A.

---

[2] SK3 has used an exchange rate of US$ 1.38: GBP 1, which is the current rate of exchange between the U.S. dollar and the British pound as of February 8, 2018.

## C. Alternatively, the Court Should Issue a Temporary Protective Order Enjoining Pathway from Transferring its Property

It is well established that "California law permits a litigant to apply for a temporary protective order." *Thunderbird Resorts Inc. v. Zimmer*, No. 3:15-CV-01304-JAH-BGS, 2015 WL 4617431, at *2 (S.D. Cal. July 30, 2015); Cal. Civ. Proc. Code § 486.010(a).  CCP Section 486.010(b) provides that "[t]he application shall state what relief is requested and shall be supported by an affidavit, which may be based on information and belief, showing that the plaintiff would suffer great or irreparable injury (within the meaning of Section 485.010) if the temporary protective order were not issued."  Cal. Civ. Proc. Code § 486.010(b).

To issue a temporary protective order, a court must find that: (a) "[t]he claim upon which the application for attachment is based is one upon which an attachment may be issued;" (b) "[t]he plaintiff has established the probable validity of the claim upon which the application for the attachment is based;" (c) "[t]he [temporary protective] order is not sought for a purpose other than the recovery upon the claim upon which the application for the attachment is based;" and (d) "[t]he plaintiff will suffer great or irreparable injury (within the meaning of Section 485.010) if the temporary protective order is not issued."  Cal. Code Civ. P. § 486.020.

Here, SK3 satisfies all four requirements for the issuance of a temporary protective order.

First, as detailed above, SK3's application is based on a final and binding arbitration award from the London Court of Arbitration that is fully enforceable under the New York Convention, and where the amounts awarded are either expressly quantified in the Award itself or, in the case of SK3's reasonable legal fees and expenses, clearly evidenced by SK3's records as well as the detailed accounting which SK3 provided to Pathway and which Pathway has never disputed.  *See Thunderbird*, 2015 WL 4617431, at *2 (finding that the first requirement was met "based on an express agreement" between the parties and noting that "the amount of Plaintiff's claim

MEMORANDUM OF POINTS AND AUTHORITIES ISO PETITION TO ENFORCE ARBITRATION AWARD

AmericasActive:11694259.6

1   is readily ascertainable as evidenced by Plaintiff's financial records, closing statements,

2   and bank records").

3       Second, SK3 has demonstrated far more than a "probable validity" of its claim,

4   as the Arbitrator has already found in the Award (which is final and binding on

5   Pathway) that Pathway concealed investment and breached its agreements with SK3.

6   The merits of SK3's underlying claim have already been arbitrated before the LCIA,

7   and SK3 now seeks to enforce the Award and ensure that Pathway does not escape

8   liability.

9       Third, SK3 has no purpose in seeking a temporary protective order other than to

10  recover money owed to it.   Because of Pathway's previous efforts to conceal

11  investment, SK3 is particularly concerned that Pathway will again try to escape liability,

12  and thus, its sole motive is to protect its interest in the Award.

13      Fourth, SK3 will suffer irreparable injury without a temporary protective order.

14  Not only did Pathway conceal investment prior to the Arbitration, but it continued to do

15  so during the Arbitration proceedings themselves, thereby deceiving not only SK3 but

16  also the Arbitrator.   If Pathway were to dissipate or otherwise transfer its funds and

17  assets out of its corporate ownership – a stratagem which Pathway, by its previous acts

18  of concealment, has given every indication it will pursue if given the opportunity – SK3

19  will be unable to levy on a judgment worth almost half a million dollars.   *See*

20  *Thunderbird*, 2015 WL 4617431, at *3 (finding irreparable injury in part because of

21  "multiple occurrences of fraud"); *Rose v. Abraham*, No. 08-606 (AWI) (SMS), 2008

22  WL 2275573, at *4 (E.D. Cal. May 21, 2008) (finding irreparable injury in part because

23  there was "a danger that the remaining $400,000 in the [escrow] account will be

24  improperly dissipated or otherwise made unavailable" by a defendant).

25      For these reasons, SK3 should be granted a temporary protective order.

26  **V.    CONCLUSION**

27      SK3 requests that the Court enter an order pursuant to 9 U.S.C. § 207

28  confirming the Award and that, on the basis of the confirmed Award, the Court enter

AmericasActive:11694259.6

judgment that Pathway is liable to pay SK3 damages of $41,000.37, post-award interest of $466.46, and arbitration costs of GBP 45,072.40.  In addition to post-award interest, SK3 is entitled to additional post-judgment interest through the date of payment at the same rate.

SK3 further requests that the Court grant its application for right to attach order and writ of attachment against all of Pathway's property (including without limitation those items of corporate property specified in Schedule A to the Application) in the amount of $482,913.08, or alternatively, a temporary protective order enjoining Pathway from transferring any of its corporate property.

Dated:  February 8, 2018                    WINSTON & STRAWN LLP

                                            By:  /s/ Ryan D. Evans
                                                 Matthew C. Bate (*PHV application pending*)
                                                 Ryan D. Evans (SBN: 295600)
                                                 Attorneys for Petitioner
                                                 SKAZZI3 CAPITAL LIMITED

MEMORANDUM OF POINTS AND AUTHORITIES ISO PETITION TO ENFORCE ARBITRATION AWARD

AmericasActive:11694259.6