

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKAZZI3 CAPITAL LIMITED,<br><br>                    Petitioner,<br><br>v.<br><br>PATHWAY GENOMICS CORPORATION,<br><br>                    Respondent. | Case No.: 18cv317-BEN(KSC)<br><br>**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S EX PARTE APPLICATION FOR AN INSPECTION ORDER**<br><br>[Doc. No. 67.] |

Before the Court is petitioner's *Ex Parte* Application for an Order to Inspect Respondent's Principal Place of Business. [Doc. No. 67.] Respondent has not filed a response or opposition to the *Ex Parte* Application, and it is not clear from the papers submitted that respondent was properly served with petitioner's moving papers. For the reasons outlined more fully below, the Court finds that petitioner's *Ex Parte* Application must be DENIED.

### *Background*

By way of a Petition to Enforce an Arbitration Award, petitioner seeks to enforce a money judgment against respondent. [Doc. No. 1.] On December 26, 2018, the District Court entered judgment against defendant in the amount of $442,670.25, an amount that was due and owing under the parties' Settlement Agreement. At the same time, the

1

District Court granted a writ of attachment in the amount of $442,670.25. [Doc. No. 26.] Thereafter, a writ of attachment was imposed on April 30, 2019 as to certain corporate property of defendant's, including bank accounts and accounts receivable arising out of any trade with certain identified third parties. [Doc. No. 36, at pp. 1-2.] On or about May 10, 2019, petitioner recovered a total of $4,199.43 via writ of execution. [Doc. No. 67-2, at p. 2.]

On May 8, 2019, petitioner completed a judgment debtor examination of respondent through respondent's representative, Stephanie Cox. [Doc. No. 37.] In support of the current *Ex Parte* Application, petitioner submitted a transcript of this examination. [Doc. No. 67-2, at pp. 40-57.] At the time of the examination, Ms. Cox testified she was employed by respondent as an office manager, had been in this position about a year, and had been employed by respondent since November 2014. [Doc. No. 67-2, at p. 45-46.] Ms. Cox testified she did not have any knowledge about respondent's property, receivables, and assets, and she did not know who would be familiar with these topics. [Doc. No. 67-2, at p. 55.] In general terms, Ms. Cox was able to describe the operations taking place at respondent's principal place of business and did identify some employees and former employees who may have knowledge about respondent's finances. [Doc. 67-2, at pp. 46-54.]

On December 20, 2019, the District Court issued an Order requiring defendant to assign to plaintiff its interest and rights in all monetary payments due or to become due from retail portals CVS, Meijer pharmacies, Walmart, and Amazon.com, as well as credit card processors American Express Corporation, Visa U.S.A. Inc., and Mastercard International Incorporated. [Doc. No. 62, at p. 6.] At the same time, the District Court issued an order restraining defendant from assigning or otherwise disposing of its rights and interests to payments through these portals. [Doc. No. 62, at p. 6.]

Although respondent was initially represented by counsel in this action, counsel filed a Motion to Withdraw on October 1, 2019. [Doc. No. 49.] This Motion was granted in an Order filed December 17, 2019. Although respondent was directed to

obtain new counsel within thirty days and have new counsel file a notice of appearance [Doc. No. 59, at p. 4], no appearance of counsel has been filed and respondent remains unrepresented in this action.

### *Discussion*

In the *Ex Parte* Application, petitioner seeks an order allowing a direct inspection of respondent's principal place of business, because it has been unable to determine through a judgment debtor examination and written discovery requests what property, receivables, and other assets could be used to satisfy the judgment. [Doc. No. 67-1, at p. 7.] In addition, on January 15, 2020, petitioner received a document entitled Notice of Sale Process for Pathway Genomics Corporation Assets from a "secured creditor" named Vadim Shulman. [Doc. No. 67-1, at p. 3; Doc. No. 67-2, at pp. 34-35.] Petitioner believes this notice raises significant concerns that respondent is being stripped of all its value and assets through self-dealing and/or fraudulent transfers that will prevent plaintiff from being able to enforce the judgment. [Doc. No. 67-1, at p. 6.]

Although no confirming evidence was submitted, petitioner's *Ex Parte* Application suggests that Mr. Shulman is respondent's "CEO, Secretary, CFO, and board member." [Doc. No. 67-1, at p. 4.] According to the Notice of Sale, respondent defaulted on "Promissory Notes" in the aggregate original principal amount of $9,250,000 and "Additional Amounts" of approximately $16,028,400 that were owed to Mr. Shulman, as a secured creditor. Therefore, Mr. Shulman exercised his right to "take control of the Collateral." [Doc. No. 67-2, at p. 34.] Pursuant to the Notice of Sale, Mr. Shulman provided shareholders and stakeholders ten (10) business days to make offers to acquire respondent's "operating assets," including "all personal and intellectual property and goodwill." [Doc. No. 67-2, at p. 34.] An auction was scheduled to occur if acceptable offers were received. [Doc. No. 67-2, at p. 35.]

The Notice of Sale also states as follows: "The Secured Creditor [*i.e.*, Mr. Shulman] has provisionally agreed to continue to finance [respondent] through the restructuring period on a modified basis in order to maintain operations sufficient to

support the fulfillment of customer contracts and [respondent's] goodwill. *All such financing will be senior secured credit.* [¶][Respondent] is working with its advisors to determine the level of financing required." [Doc. No. 67-2, at p. 35.] For further information, Notice recipients were provided with contact information for Mark A. Greenberg of Silverstone Capital Advisors, LLC and John A. Sten of Pierce Atwood LLP. [Doc. No. 67-2, at p. 35.] Although petitioner's counsel submitted a Declaration in support of the *Ex Parte* Application to Inspect Respondent's Principal Place of Business, the Declaration does not state whether these individuals were contacted for additional information. [Doc. No. 67-2, at pp. 1-5.]

Respondent argues that the Notice of Sale creates exigent circumstances which justify an inspection order. [Doc. No. 67-1, at p. 6.] However, petitioner did not cite, and this Court was unable to locate, any authority which would authorize the Court to issue an order granting petitioner the right to enter and inspect respondent's principal place of business under the circumstances presented to locate assets that may aid in the enforcement of the judgment. Federal Rule of Civil Procedure 34 does provide in part as follows:

>   (a) A party may serve on any other party a request within the scope of Rule 26(b):
>
>    (2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test or sample the property or any designated object or operation on it.
>
>   (b) The request:
>
>    (A) must describe with reasonable particularity each item or category of items to be inspected;
>
>    (B) must specify a reasonable time, place and manner for the inspection and for performing the related acts; and

4

(C) may specify the form or forms in which electronically stored information is to be produced.

Fed.R.Civ.P. 34(a)(2).

After a formal, written request has been made under Rules 34(a) and 34(b), "[t]he party to whom the request is directed must respond in writing within 30 days after being served...." Fed.R.Civ.P. 34(b)(2)(A). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed.R.Civ.P. 34(b)(2)(B). If the responding party objects to the request for an inspection, the parties must meet and confer and contact the Court if they are unable to reach agreement. Fed.R.Civ.P 37(a)(1); Civ. L.R. 26.1(a); Chambers Rule VIII(A). If the responding party does not respond and/or declines to meet and confer, the requesting party may then file a motion to compel as provided in Federal Rule of Civil Procedure 37(a).

A Rule 34 request for "unrestricted access" to a party's "corporate headquarters" is "overly broad on its face." *Schwab v. Wyndham Int'l, Inc.*, 225 F.R.D. 538-539 (N.D. Tex. 2005). "'Since entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted.'" *Keith H. v. Long Beach Unified School Dist.*, 228 F.R.D. 652, 659 (C.D. Cal. 2005), quoting *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978.). As noted above, inspection requests under Rule 34(a) must be within the scope of Rule 26(b), and, as a result, "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." *Belcher*, 588 F.2d at 908. For example, Rule 26(b)(1) indicates that the Court must consider "whether the burden ... of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). Rule 26(b)(2)(B) further states that the Court must limit discovery that "can be obtained from some other source that is more convenient, [or] less burdensome...." Fed.R.Civ.P. 26(b)(2)(C)(i).

Here, petitioner's *Ex Parte* Application and supporting documents do not indicate respondent has been properly served with a formal, written Rule 34 request for inspection or with respondent's *Ex Parte* Application for an Inspection Order. Rather, the Declaration of petitioner's counsel only states that he has attempted to contact respondent via telephone and by e-mail at an e-mail address provided to him by respondent's former counsel, but respondent has not returned any of counsel's calls or e-mails. [Doc. No. 67-2, at pp. 4.] As a result, the parties have not satisfied the meet and confer requirements. In addition, respondent is unrepresented at this time, even though the District Court directed respondent to retain new counsel by January 17, 2020. [Doc. No. 59, at p. 4.] Petitioner also reported in the *Ex Parte* Application that respondent has moved its office, but respondent has not provided this information to the Court. [Doc. No. 67-1, at p. 7 n.1.] The Court's docket does not even include an address for respondent or any other information that could be used to serve respondent through the Court's electronic-filing system. Because respondent is unrepresented, has not provided information necessary for electronic service, and has not responded to e-mails or telephone calls, it would be necessary for petitioner to serve respondent with discovery requests and any other documents, such as motions or *ex parte* applications, as provided in Federal Rule of Civil Procedure 5.

Moreover, without more, it does not appear that a Rule 34 inspection by petitioner of respondent's place of business is likely to result in discovery of information that would be helpful in enforcing the judgment. In this regard, the Court notes that petitioner has not described items that it wishes to inspect on the premises "with reasonable particularity," and it does not appear petitioner has any information as to what assets or information about assets could be located at respondent's principal place of business that might be used to satisfy the judgment. Fed.R.Civ.P. 34(b)(1)(A). In addition, as outlined more fully below, there are less burdensome means for petitioner to discover relevant information. Accordingly, under the circumstances presented, the Court finds that petitioner's *Ex Parte* Application must be DENIED to the extent it seeks an inspection order under Rule 34.

///

6

18cv317-BEN(KSC)

With respect to the enforcement of money judgments, Federal Rule of Civil Procedure 69 provides as follows: "A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—***must accord with the procedure of the state where the court is located. . . .***" Fed.R.Civ.P. 69(a)(1) (emphasis added).

In California, "[d]etailed statutory provisions govern the manner and extent to which civil judgments are enforceable." *Imperial Bank v. Pim Electric, Inc.*, 33 Cal.App.4th 540, 546 (1995). "In 1982, California enacted a comprehensive Enforcement of Judgments Law ("EJL") governing the enforcement of all civil judgments in California." *In re Burns*, 291 B.R. 846, 850 (9th Cir. 2003), citing *Cal. Practice Guide: Enforcement Judgements & Debts* §6:1-6:2 (The Rutter Group). Petitioner has not cited, and the Court was unable to locate, any authority on the enforcement of civil judgments under California law, for this Court to issue an order allowing petitioner to enter and conduct a direct inspection of respondent's principal place of business to discover assets and other property that could be used to satisfy the judgment.

Instead, under California law, a judgment creditor may apply to the Court for an order requiring the judgment debtor or any "third person" who "has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment creditor. . ." to appear before the Court for examination. Cal. Code Civ. Proc. §§ 708.110 and 708.120. A "specified individual" may be ordered to appear for examination. Cal. Code Civ. Proc. § 708.150. In addition, any person with knowledge that may aid in the enforcement of a judgment, *e.g.*, the debtor's accountant, bookkeeper, and others who do not possess or control the debtor's property or owe the debtor money, may be subpoenaed to testify. *Shrewsbury Mgmt., Inc. v. Superior Court*, 32 Cal. App. 5th 1213, 1225-1226 (2019). *See also Cal. Practice Guide: Enforcement Judgements & Debts* §6:1282.

Following a judgment debtor examination, a creditor may request a "turnover order" requiring the debtor or a third party to deliver identified assets to a levying officer or a receiver. *In re Burns*, 291 B.R. at 854-855. If an order to appear for an examination is

properly served (*i.e.*, by a sheriff, marshal, a person specially appointed by the court in the order, or a registered process server), an examinee who fails to appear is subject to contempt. Cal. Code Civ. Proc. §§ 708.110; 708.120; 708.150; 708.170.

Thus far, respondent has not answered petitioner's written discovery requests despite the Court's Order to do so. [Doc. No. 64.] Petitioner was able to conduct a debtor's examination on May 8, 2019, but the examination did not result in enough information to aid in satisfaction of the judgment. [Doc. No. 67-2, at p. 43.] Respondent's office manager was produced as respondent's "person most knowledgeable" about receivables, assets, and other property. [Doc. No. 67-2, at pp. 44-57.] The office manager testified she did not have any knowledge about respondent's property, receivables, and assets. [Doc. No. 67-2, at p. 55.] However, the office manager did describe respondent's business operations at its principal place of business and did disclose the names of individuals employed or formerly employed by respondent who could possibly provide relevant information. The transcript of the debtor's examination also indicates petitioner was aware at that time of the examination that Mr. Shulman was one of respondent's investors and that he was listed with the Secretary of State as respondent's chief executive officer, secretary, president, and director. [Doc. No. 67-2, at pp. 46-55.] In addition, as noted above, the Notice of Sale provided recipients with contact information for two individuals who could provide "further information." [Doc. No. 67-2, at p. 35.]

In sum, rather than a direct inspection of respondent's principal place of business, petitioner must, as provided by California law, exhaust sources of relevant information through direct examination of the judgment debtor and third parties who may have knowledge that could aid in the enforcement of the judgment. Accordingly, this Court finds that petitioner's *Ex Parte* Application for an Order to Inspect Respondent's Principal Place of Business must be DENIED.

In the *Ex Parte* Application, plaintiff also requests a temporary restraining order or preliminary injunction prohibiting defendant from transferring any property, receivables or assets that would frustrate plaintiff's efforts to enforce the judgment. [Doc. No. 67-1, at

pp. 8-9.] In addition, after filing the instant *Ex Parte* Application, plaintiff filed another set of documents related to its request for a temporary restraining order or preliminary injunction. [Doc. No. 68.] This portion of plaintiff's Ex Parte Application is under submission. The Court will respond separately to plaintiff's request for a temporary restraining order and/or a preliminary injunction in a report and recommendation to the District Judge assigned to this case.

## *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED that petitioner's Ex Parte Application for an Order to Inspect Respondent's Principal Place of Business is DENIED. This Order is without prejudice to petitioner seeking and obtaining orders for the judgment debtor and/or third parties to appear for examination as provided by California law.

IT IS SO ORDERED.

Dated: March 3, 2020

Hon. Karen S. Crawford
United States Magistrate Judge

9

18cv317-BEN(KSC)